**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **DIAGNOSTIC AFFILIATES OF NORTHEAST HOU, LLC D/B/A 24 HOUR COVIDRT-PCR LABORATORY ON BEHALF OF AND AS ATTORNEY IN FACT FOR PATIENT CS** | § § § § | |
| *Plaintiff,* | § | C.A. No. _____ |
| | § | |
| **v.** | § | |
| **CIGNA HEALTH AND LIFE INSURANCE COMPANY, CIGNA HEALTH AND WALARE PLAN COMMITTEE, AND CIGNA MEDICAL PLAN** | § § § § | |
| *Defendants.* | | |

<u>**COMPLAINT AND JURY DEMAND**</u>

24 Hour Covid Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24 Hour Covid RT-PCR Laboratory ("24 Hour Covid" or "Plaintiff") on behalf of Patient CS[1] or, in the alternative, as the attorney-in-fact for Patient CS, by and through its attorneys, brings its Complaint against Cigna Health and Life Insurance Co. (the "Cigna TPA"), Cigna Health and Walare Plan Committee (the "Cigna Medical Plan Committee"), and the Cigna Medical Plan (the Cigna TPA, the Cigna Medical Plan Committee, and the Cigna Medical Plan shall be collectively referred to as the "Cigna Defendants"), and allege as follows:

[INTENTIONALLY LEFT BLANK]

---

[1] Patient CS' identity shall be withheld from all public filings. Patent CS' protected health information will be provided to the Court and to the Cigna Defendants under seal and/or upon request.

## NATURE OF THE CLAIMS

1.      24 Hour Covid is a CLIA certified high complexity laboratory that has requested emergency use authorization under Section 564 of the Federal Food, Drug, and Cosmetic Act; therefore, has all authorizations and/or approvals necessary to render and be reimbursed for Covid Testing services.[2] At the height of the pandemic 24 Hour Covid operated seven specimen collection sites located across the States of Texas and Louisiana, and partnered with employers and independent school districts across Texas to render Covid Testing services to employees, teachers, students, and other staff members.[3]

2.      Cigna TPA serves in the trusted role of third-party claims administrator for self-funded health plans, including its own employer sponsored health plan, the Cigna Medical Plan. The Cigna Medical Plan Committee serves as the plan administrator for the Cigna Medical Plan. All three are named Defendants in this Complaint.

3.      Importantly, 24 Hour Covid does not have an in-network contract with the Cigna TPA or any of its affiliated entities, nor has the Cigna TPA or any of its affiliated entities even attempted to negotiate an amount to be paid to 24 Hour Covid for Covid Testing services despite 24 Hour Covid's multiple attempts and offers to do so. Therefore, 24 Hour Covid is considered an out-of-network ("OON") laboratory with the Cigna TPA and any of its affiliated entities.

4.      Under ordinary circumstances, not all health plans administered by the Cigna TPA offer its members with access to OON providers and facilities. However, pursuant to Section 6001 of the FFCRA, as amended by Section 3201 of the CARES Act, all group health plans and health

---

[2] See 21 U.S.C. § 360bbb–3.
[3] Humble ISD Expands Options for Student Covid Testing (https://www.humbleisd.net/covid19studenttesting); Humble ISD expands free COVID-19 testing options to provide easier access for students (https://communityimpact.com/houston/lake-houston-humble-kingwood/education/2021/01/07/humble-isd-expands-free-covid-19-testing-options-to-provide-easier-access-for-students/).

insurance issuers offering group or individual health insurance coverage are required to provide benefits for certain items and services related to diagnostic testing for the detection or diagnosis of COVID-19 without the imposition of cost-sharing, prior authorization, or other medical management requirements when such items or services are furnished on or after March 18, 2020, for the duration of the COVID-19 public health emergency regardless of whether the Covid Testing provider is an in-network or OON provider.[4]

5.      Furthermore, Section 3202(a) of the CARES Act provides that all group health plans and health insurance issuers covering Covid Testing items and services, as described in Section 6001 of the FFCRA, must reimburse OON providers in an amount that equals the cash price for such Covid Testing services as listed by the OON provider on its public internet website or to negotiate a rate/amount to be paid that is less than the publicized cash price.

6.      Here, the Cigna TPA initially failed to adjudicate Patient CS' Covid Testing claim in accordance with the requirements of Section 3202(a) of the CARES Act. Despite 24 Hour Covid's attempts to appeal this adverse benefit determination through the Cigna TPA's internal administrative appeals process, the Cigna TPA not only upheld its initial determination to unlawfully process Patient CS' claim but also failed to provide a sufficient response to 24 Hour Covid's appeal in violation of 29 CFR § 2560.503-1 and to provide requested documentation in violation of 29 U.S. Code § 1132(c). 24 Hour Covid, on behalf of Patient CS, has fully exhausted the Cigna TPA's internal administrative appeals process.

7.      Furthermore, because the Cigna Medical Plan Committee has contracted with the Cigna TPA to act as its third-party claims administrator for the Cigna Medical Plan, the Cigna

---

[4] *See* CMS FAQ Parts 42, 43, and 44, The FFCRA and the CARES Act.

Medical Plan Committee, through its silence and inaction, is dually liable for the Cigna TPA's violations of the FFCRA, the CARES Act, and ERISA pursuant to 29 U.S.C. § 1105(a).

## PARTIES

8.       24 Hour Covid is a limited liability company organized under the laws of the State of Texas, with its company headquarters located at 22751 Professional Drive, Suite 210, Kingwood, Texas 77339. 24 Hour Covid, on behalf of Patient CS or, in the alternative, as the attorney-in-fact of Patient CS, has lawful standing to bring in all claims asserted herein.

9.       Defendant Cigna Health and Life Insurance Co. (the "Cigna TPA") is a corporation organized under the laws of the State of Connecticut with its principal place of business in Bloomfield, Connecticut. It is a foreign for-profit corporation operating in the State of Texas and administers plans that are funded by plan sponsors in Texas. The Cigna Claims Administrator may be served with process by serving its registered agent for service at CT Corporation System 350 North St Paul Street Dallas, TX 75201.

10.      Defendant Cigna Health & Walare Plan Committee (the "Cigna Health Plan Committee") is the committee identified by the Cigna Medical Plan to act as the Cigna Medical Plan's plan administrator.[5] The Cigna Plan Administrator may be served with process by serving Alicia Vaslow at 1601 Chestnut Street, TL05T, Philadelphia, PA 19192.

11.      Defendant Cigna Medical Plan is a self-funded health plan subject to ERISA. The Cigna Health Plan may be served with process by serving Alicia Vaslow at 1601 Chestnut Street, TL05T, Philadelphia, PA 19192.[6]

---

[5] *See* Exhibit A (Cigna Health Plan Form 5500).
[6] *Supra* Footnote 5.

## JURISDICTION AND VENUE

12.     This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1131, as 24 Hour Covid asserts federal claims against the Cigna Defendants in Counts I, II, III, IV and V under the FFCRA, the CARES Act, and ERISA.

13.     The Court has personal jurisdiction over the parties because 24 Hour Covid submits to the jurisdiction of this Court, and the Cigna Defendants systemically and continuously conduct business in the State of Texas, and otherwise have minimum contacts with the State of Texas sufficient to establish personal jurisdiction over them.

14.     Venue is appropriate under 29 U.S.C. § 1132 (e)(2), which requires that an ERISA plan participant has the right to bring suit where he/she resides or where he/she alleges that the violation of ERISA occurred. 24 Hour Covid alleges that the Cigna Defendants violated ERISA within the District Court of Texas.

## STATEMENT OF FACTS

### I.     BACKGROUND AS TO THE FFCRA AND THE CARES ACT

15.     Pursuant to Section 319 of the Public Health Service Act, on January 31, 2020, the Secretary of Health and Human Services ("HHS") issued a determination that a Public Health Emergency exists and has existed as of January 27, 2020, due to confirmed cases of COVID-19 being identified in this country.[7]

16.     On March 13, 2020, the President issued Proclamation 9994 declaring a National Emergency concerning the COVID-19 outbreak with a determination that a national emergency exists nationwide, pursuant to Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

---

[7] *See* https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx (Determination that a Public Health Emergency Exists).

17.     To facilitate the nation's response to the COVID-19 pandemic, Congress passed the FFCRA and the CARES Act to, amongst other things, require group health plans and health insurance issuers offering group or individual health insurance coverage to: (i)  provide benefits for certain items and services related to diagnostic testing for the detection or diagnosis of COVID-19 without the imposition of any cost-sharing requirements (*i.e.* deductibles, copayments, and coinsurance) or prior authorization or other medical management requirements;[8] and (ii) to reimburse any provider for COVID-19 diagnostic testing an amount that equals the negotiated rate or, if the plan or issuer does not have a negotiated rate with the provider (*e.g.* 24 Hour Covid), the cash price for such service that is listed by the provider on its public website in accordance with 45 CFR § 182.40.[9]

18.     To further clarify to issuers and health plans their legal expectations when processing a claim for Covid Testing in accordance with the FFCRA and the CARES Act, the Department of Labor ("DOL"), the Department of Health and Human Services ("HHS"), and the Department of the Treasury (the "Treasury") (collectively, the "Departments") jointly prepared and issued a series of Frequently Asked Questions ("FAQs") to address any stakeholder questions or concerns pertaining to the proper adjudication of Covid Testing claims. The following FAQs summarize the health plan and issuers' obligations as it pertains to covering and paying for Covid Testing services during the public health emergency:

**The Departments FAQ, Part 42, Q1**: *Which types of group health plans and health insurance coverage are subject to section 6001 of the FFCRA, as amended by section 3201 of the CARES Act?*

Section 6001 of the FFCRA, as amended by section 3201 of the CARES Act, applies to group health plans and health insurance issuers offering group or individual health insurance coverage (including grandfathered health plans as defined in section 1251(e) of the Patient Protection and Affordable Care). The term "group health plan" includes both insured and self-insured group health

---

[8] Pub. L. No. 116-127 (2020).
[9] Pub. L. No. 116-136 (2020).

plans. It includes private employment-based group health plans (ERISA plans), non-federal governmental plans (such as plans sponsored by states and local governments), and church plans.

"Individual health insurance coverage" includes coverage offered in the individual market through or outside of an Exchange, as well as student health insurance coverage (as defined in 45 CFR 147.145).[10]

**The Departments FAQ, Part 42, Q3**: *What items and services must plans and issuers provide benefits for under section 6001 of the FFCRA?*

Section 6001(a) of the FFCRA, as amended by Section 3201 of the CARES Act, requires <u>plans and issuers to provide coverage for</u> the following items and services:

(1) <u>An in vitro diagnostic test</u> as defined in section 809.3 of the title 21, Code of Federal Regulations, (or its successor regulations) for the detection of SARS-CoV-2 or the <u>diagnosis of COVID-19</u>, and the administration of such a test, that - ...

B. The developer has requested, or intends to request, emergency use authorization under section564 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360bbb-3), unless and until the emergency use authorization request under such section 564 has been denied or the developer of such test does not submit a request under such section within a reasonable timeframe;...[11]

**The Departments FAQ, Part 42, Q6**: *May a plan or issuer impose any cost-sharing requirements, prior authorization requirements, or other medical management requirements for benefits that must be provided under section 6001(a) of the FFCRA, as amended by section 3201 of the CARES Act?*

<u>No</u>. Section 6001(a) of the FFCRA provides that plans and issuers shall not impose any cost-sharing requirements (including deductibles, copayments, and coinsurance), prior authorization requirements, or other medical management requirements for these items and services. <u>These items and services must be covered without cost sharing when medically appropriate for the individual, as determined by the individual's attending healthcare provider in accordance with accepted standards of current medical practice</u>.[12]

**The Departments FAQ, Part 42, Q7**: *Are plans and issuers required to provide coverage for items and services that are furnished by providers that have not agreed to accept a negotiated rate as payment in full (i.e., out-of-network providers)?*

<u>Yes</u>. Section 3202(a) of the CARES Act provides that a plan or issuer providing coverage of items and services described in section 6001(a) of the FFCRA shall reimburse the provider of the diagnostic testing as follows: ...

2. <u>If the plan or issuer does not have a negotiated rater with such provider, the plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by</u>

---

[10] *See* https://www.cms.gov/files/document/FFCRA-Part-42-FAQs.pdf.
[11] *Id.*
[12] *Id.*

the provider on a public internet website, or the plan or issuer may negotiate a rate with the provider for less than such cash price…[13]

**The Departments FAQ, Part 43, Q9**: *Does Section 3202 of the CARES Act protect participants, beneficiaries, and enrollees from balance billing for a COVID-19 diagnostic test?*

The Departments read the requirement to provide coverage without cost sharing in section 6001 of the FFCRA, together with section 3202(a) of the CARES Act establishing a process for setting reimbursement rates, as intended to protect participants, beneficiaries, and enrollees from being balance billed for an applicable COVID-19 test. Section 3202(a) contemplates that a provider of COVID-19 testing will be reimbursed either a negotiated rate or an amount that equals the cash price for such service that is listed by the provider on a public website. In either case, the amount the plan or issuer reimburses the provider constitutes payment in full for the test, with no cost sharing to the individual or other balance due. Therefore, the statute generally precludes balance billing for COVID-19 testing. However, section 3202(a) of the CARES Act does not preclude balance billing for items and services not subject to section 3202(a), although balance billing may be prohibited by applicable state law and other applicable contractual agreements.[14]

**The Departments FAQ, Part 44, Q1**: *Under the FFCRA, can plans and issuers use medical screening criteria to deny (or impose cost sharing on) a claim for COVID-19 diagnostic testing for an asymptomatic person who has no known or suspected exposure to COVID-19?*

No. The FFCRA prohibits plans and issuers from imposing medical management, including specific medical screening criteria, on coverage of COVID-19 diagnostic testing. Plans and issuers cannot require the presence of symptoms or a recent known or suspected exposure, or otherwise impose medical screening criteria on coverage of tests.

When an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized health care provider, or when a licensed or authorized health care provider refers an individual for a COVID-19 diagnostic test, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment" and the test should be covered without cost sharing, prior authorization, or other medical management requirements.[15]

**The Departments FAQ, Part 44, Q3**: *Under the FFCRA, are plans and issuers required to cover COVID-19 diagnostic tests provided through state- or locality-administered testing sites?*

Yes. As stated in FAQs Part 43, Q3, any health care provider acting within the scope of their license or authorization can make an individualized clinical assessment regarding COVID-19 diagnostic testing. If an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized provider, including from a state- or locality-administered site, a "drive-through" site,

---

[13] *Id.*

[14] *See* https://www.cms.gov/files/document/FFCRA-Part-43-FAQs.pdf; *See also* FAQ Part 43 Q12: … Because the Departments interpret the provisions of section 3202 of the CARES Act as specifying a rate that generally protects participants, beneficiaries, and enrollees from balance billing for a COVID-19 test (see Q9 above), the requirement to pay the greatest of three amounts under the regulations implementing section 2719A of the PHS Act is superseded by the requirements of section 3202(a) of the CARES Act with regard to COVID-19 diagnostic tests that are out-of-network emergency services. For these services, the plan or issuer must reimburse an out-of-network provider of COVID-19 testing an amount that equals the cash price for such service that is listed by the provider on a public website, or the plan or issuer may negotiate a rate that is lower than the cash price.

[15] *See* https://www.cms.gov/files/document/faqs-part-44.pdf.

Page | 8

and/or a site that does not require appointments, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment."[16]

**The Departments FAQ, Part 44, Q5**: *What items and services are plans and issuers required to cover associated with COVID-19 diagnostic testing? What steps should plans and issuers take to help ensure compliance with these requirements?*

… Plans and issuers should maintain their claims processing and other information technology systems in ways that protect participants, beneficiaries, and enrollees from inappropriate cost sharing and should document any steps that they are taking to do so…[17]

19.     To supplement the FAQs publicized by the Departments, the Internal Revenue Service (the "IRS") issued Notice 2020-15 pertaining to high deductible health plans ("HDHPs") and expenses related to COVID-19 to provide members of HDHPs (including those HDHPs administered by the Cigna TPA) the confidence that Covid Testing will be covered, in full, by their HDHP. Notice 2020-15 states as follows:

 [d]ue to the unprecedented public health emergency posed by COVID-19, and the need to eliminate potential administrative and financial barriers to testing for and treatment of COVID-19 [emphasis added], a health plan that otherwise satisfies the requirements to be an HDHP under section 223(c)(2)(A) will not fail to be an HDHP merely because the health plan provides medical care services and items purchased related to testing for and treatment of COVID-19 prior to the satisfaction of the applicable minimum deductible.

20.     In addition to the federal guidance publicized by the Departments, the Texas Department of Insurance ("TDI") issued Commissioner's Bulletin # B-0017-20, which also pertains to coverage for COVID-19 testing and network adequacy. In this Bulletin, TDI mandates exclusive provider networks ("EPOs") and health maintenance organizations ("HMOs") to comply with the Covid Testing adjudication requirements of the FFCRA and the CARES Act, and "instructs health plans to pay a provider's negotiated rate or, if a health plan does not have a negotiated rate with the provider, pay the provider's publicly available cash price for testing [emphasis added]."[18]

---

[16] *Id.*
[17] *Id.*
[18] In an inquiry posed by 24 Hour Covid to TDI pertaining to the applicability of Commissioner's Bulletin #B-0017-

## II.        PATIENT CS' COVID TESTING CLAIM

### a.        History of Patient CS' Claim

21.        Patient CS is a member of the Cigna Medical Plan, a self -funded health plan subject to ERISA which mandates compliance with the FFCRA and the CARES Act.[19] The Cigna Medical Plan's plan administrator is the Cigna Medical Plan Committee, and the Cigna Medical Plan's third-party claims administrator is the Cigna TPA.

22.        Patient CS visited a medical practice/physician on November 25, 2020 and informed the medical practice/physician that he suffered from nasal congestion and had recently come into contact with and had been exposed to an individual diagnosed with COVID-19. The medical practice/physician determined that Covid Testing services for Patient CS was medically necessary noting diagnosis codes Z20.828 (contact with and (suspected) exposure to other viral communicable diseases) and R09.81 (nasal congestion) on Patient CS' Covid Testing order form to 24 Hour Covid.[20] That same day, 24 Hour Covid collected Patient CS' specimen and performed the ordered test where Patient CS tested positive for COVID-19.[21]

23.        After all Covid Testing services were provided, 24 Hour Covid timely submitted claims to the Cigna TPA for payment. 24 Hour Covid provided such services in good faith, and, as such, reasonably expected a fair and timely payment in return from the Cigna Defendants. As

---

20 to PPO and POS plans, TDI states the following: "Yes, it is TDI's position that PPO and POS plans must also comply with FFCRA and the 'CARES Act' … Commissioner's Bulletin #B-0017-20 made it expressly clear that in-network based plans, "insurers offering exclusive provider networks (EPOs) and health maintenance organizations (HMOs)… fall within the federal definitions for group health plans or health insurance issuers offering group or individual health insurance coverage." Presumably, the purpose of the bulletin was to expressly clarify for network-based plans such as EPOs and gated HMO plans our expectation to protect consumers regardless of network affiliation, as contemplated by the CARES Act and by Texas' laws. PPO and EPO issuers are subject to but not limited to Texas Insurance Code (TIC) Chapter 1301. HMOs may issue POS plans as required under TIC Chapter 1273. As PPO and POS plans are captured under the terms "issuer", "HMO", "group health plans", "health insurance issuers", and "individual health insurance coverage"; PPO and POS plans are not excluded from compliance."

19 *See* Exhibit B (Patient CS' Cigna Insurance Card).

20 *See* Exhibit C (Patient CS' Covid Testing Order Form).

21 *See* Exhibit D (Patient CS' COVID-19 Diagnostic Testing Laboratory Results)

detailed above, Section 3202(a) of the CARES Act requires health plans and issuers to pay OON Covid Testing providers either their: (i) cash prices as publicized by the providers, or (ii) a negotiated amount. Critically, 24 Hour Covid made a number of offers to the Cigna TPA and its affiliated entities in attempt to negotiate an amount to be paid on Covid Testing claims, and, on several occasions, even went as far as proposing to the Cigna TPA and its affiliated entities that it agree to a rate 135% to 150% of the applicable Medicare fee schedule for all Covid Testing services. However, all of 24 Hour Covid's offers fell on deaf ears and were never responded to.

24.     Because the Cigna TPA failed to negotiate a rate to pay 24 Hour Covid for Covid Testing services, Patient CS' Covid Testing claim must have been adjudicated to reimburse 24 Hour Covid its cash price for services. The following illustrates how Patient CS' Covid Testing claim was improperly adjudicated:

[INTENTIONALLY LEFT BLANK]



25.     Not only has the Cigna TPA, as the third-party claims administrator for the Cigna Medical Plan, failed to adjudicate Patient CS' Covid Testing claim in compliance with Section 3202(a) of the CARES Act, but, through its failure to comply with this strict requirement, has left Patient CS financially responsible for the balance between the amount paid by the Cigna TPA on behalf of the Cigna Medical Plan and the billed amount/cash price. The manner in which the Cigna TPA adjudicated Patient CS' Covid Testing claim is in complete conflict with Congress and the Departments' intentions that no covered individual is to ever be left financially responsible for Covid Testing services as it pertains to their cost-sharing and balance-billing obligations. [22]

---

[22] The Departments FAQ, Part 44, Q9:
**Does Section 3202 of the CARES Act protect participants, beneficiaries, and enrollees from balance billing for a COVID-19 diagnostic test?**
The Departments read the requirement to provide coverage without cost sharing in section 6001 of the FFCRA,

26.     The adverse benefit determination reason provided by the Cigna TPA for Patient CS' underpaid Covid Testing claim is also not entirely clear. In the Cigna TPA's initial adjudication of Patient CS' claim, the Cigna TPA provides that the following reason for underpayment: "CO-45 – Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement."

27.     First, because 24 Hour Covid is an OON laboratory with the Cigna TPA, there is no contract fee arrangement that the parties have agreed to that allow the Cigna TPA to unilaterally underpay 24 Hour Covid. Second, any the Cigna TPA fee schedules/maximum allowables that typically apply to OON providers is superseded by the reimbursement methodology prescribed by Section 3202(a) of the CARES Act. Lastly, because Patient CS' Covid Testing claim was not adjudicated in accordance with Section 3202(a) of the CARES Act, no "legislated fee arrangement" requirement was satisfied by the Cigna TPA.

b.      *Exhaustion of the Cigna TPA's Internal Administration Appeals Process and Failure to Provide Requested Information.*

28.     Following the Cigna TPA's initial adverse benefit determination of Patient CS' Covid Testing claim, 24 Hour Covid submitted a Level 1 Appeal for Patient CS requesting the Cigna Defendants to reimburse 24 Hour Covid in compliance with the FFCRA and the CARES Act.[23] As part of the appeal, the following requests/inquires were made to the Cigna Defendants: (i) for Patient CS' Covid Testing claim to be reprocessed in accordance with the requirements of the FFCRA and the CARES Act; and (ii) in accordance with 29 CFR 2560.503-1(i)(5) and (j)(3),

---

together with section 3202(a) of the CARES Act establishing a process for setting reimbursement rates, as intended to protect participants, beneficiaries, and enrollees from being balance billed for an applicable COVID-19 test. <u>Section 3202(a) contemplates that a provider of COVID-19 testing will be reimbursed either a negotiated rate or an amount that equals the cash price for such service that is listed by the provider on a public website. In either case, the amount the plan or issuer reimburses the provider constitutes payment in full for the test, with no cost sharing to the individual or other balance due.</u>

[23] *See* Exhibit E (Patient CS' Level 1 Appeal and Letter in Support of Re-Adjudication of Covid Testing Claim).

to provide 24 Hour Covid with all documents, records, and other information relevant to this claim, including, but not limited to: the health plan's summary plan document(s) and other relevant plan documents; the administrative services agreement (if applicable); the methodology used in calculating the allowed amount for this claim; and any and all internal rules, policies, and guidelines relied upon in the processing of this claim. The Cigna Defendants failed to both re-adjudicate the claim and to provide the requested information/materials.

29.     On September 1, 2021, the Cigna TPA issued a letter to 24 Hour Covid upholding its initial denial, stating its decision was based on the bundling of primary and secondary services.[24] However, the Cigna TPA's response did not comply with ERISA claim requirements as it pertains to appeal responses as it does not address any points of concern or inquires made by 24 Hour Covid on behalf of Patient CS regarding its failure to comply with the FFCRA and/or the CARES Act, make no reference to any obligations to comply with the aforementioned laws, and, as mentioned above, no requested information/materials were ever provided.

30.     Regardless, the Cigna TPA 's response letter states that "[its] decision represents the final step of the internal appeal process." Therefore, 24 Hour Covid has exhausted the Cigna TPA's appeals process and is entitled to pursue any available remedies under Section 502(a) of ERISA.[25]

### III.    THE FIDUCIARY DUTIES OF THE CIGNA TPA AND THE CIGNA MEDICAL PLAN COMMITTEE

31.     Pursuant to 29 U.S.C. § 1104 (A)(1)(B), the Cigna Medical Plan Committee, as the plan administrator to the Cigna Health Plan, and the Cigna TPA, as a third-party claims administrator of the Cigna Medical Plan, both constitute as fiduciaries to members of the Cigna

---

[24] *See* Exhibit F (Cigna Appeal Response dated September 1, 2021).
[25] *Supra* Footnote 24.

Medical Plan; therefore, they must discharge their duties solely in the interest of the members of the Cigna Medical Plan (*e.g.* Patient CS). Also, pursuant to 29 U.S.C. § 1105(a), the Cigna Medical Plan Committee is also liable for Cigna's breach of its fiduciary duties.

32.     The Cigna TPA and the Cigna Medical Plan Committee are administering the Cigna Health Plan's benefits in a manner that cause all Cigna Defendants to be in violation of the FFCRA, the CARES Act, ERISA, and the terms of the Cigna Medical Plan's plan terms. Moreover, the Cigna TPA and the Cigna Medical Plan Committee are not administering the benefits of the Cigna Medical Plan in the best interest of its members as their administration of the Cigna Medical Plan have left members of the Cigna Medical Plan, like Patient CS, financially responsible for amounts that should otherwise be covered by the Cigna Medical Plan. Furthermore, the Cigna Medical Plan Committee is prohibited by ERISA from delegating all of its fiduciary duties to another entity such as the Cigna TPA and has a fiduciary obligation to oversee the actions of its third-party claims administrator.

33.     The Cigna Medical Plan Committee breached its fiduciary duties under ERISA by allowing the Cigna TPA to improperly adjudicate Patient CS' Covid Testing claim in violation of the FFCRA and the CARES Act and causing him to be financially responsible for a balance-bill that Congress and the Departments did not intend. Moreover, the Cigna Medical Plan Committee breached its fiduciary duty to provide requested materials to 24 Hour Covid on behalf of Patient CS so that 24 Hour Covid and Patient CS could have a full and fair review of its improperly adjudicated claims 29 CFR § 2560.503-1. Lastly, the Cigna Medical Plan Committee is woefully misinformed of the applications of the FFCRA and CARES Act and its obligations thereunder. Ultimately, The Cigna Medical Plan Committee is <u>not</u> discharging its duties with respect to the Cigna Health Plan in the interest of the Cigna Health Plan and for the exclusive purpose of

providing benefits to members and defraying reasonable expenses of administering the Cigna Health Plan.

34.     The Cigna TPA, as the third-party claims administrator for the Cigna Health Plan, breached its fiduciary duties under ERISA by improperly adjudicating Patient CS' Covid Testing claim in violation of the FFCRA and the CARES Act, and causing him to be financially responsible for a balance-bill that Congress and the Departments did not intend. Moreover, the Cigna TPA breached its fiduciary duty to provide requested materials to 24 Hour Covid on behalf of Patient CS so that 24 Hour Covid and Patient CS could have a full and fair review of its improperly adjudicated claims in accordance with 29 CFR § 2560.503-1. Lastly, the Cigna TPA is woefully misinformed of the applications of the FFCRA and CARES Act and its obligations thereunder. Ultimately, The Cigna TPA is <u>not</u> discharging its duties with respect to the Cigna Health Plan in the interest of the Cigna Health Plan and for the exclusive purpose of providing benefits to members and defraying reasonable expenses of administering the Cigna Health Plan.

## **STANDING**

35.     24 Hour Covid has standing to sue as the designated authorized representative of Patient CS. Patient CS signed an Assignment of Benefits and Designation of Authorized Representative ("AOB") in favor of 24 Hour Covid.[26] A broad of array of rights have been assigned to 24 Hour Covid as Patient CS' designated authorized representative including, but not limited to, the rights to bring all causes of action detailed below against the Cigna Defendants.

36.     In the alternative, 24 Hour Covid has standing to sue as the attorney-in-fact of Patient CS. Patient CS signed a Special Power of Attorney ("POA") appointing 24 Hour Covid as its attorney-in-fact.[27] A broad of array of rights have been granted to 24 Hour Covid as Patient CS'

---

[26] Exhibit G (Patient CS Executed Assignment of Benefits and Designation of Authorized Representative Form).
[27] Exhibit H (Patient CS Executed Special Power of Attorney).

attorney-in-fact including, but not limited to, the rights to bring all causes of action detailed below against the Cigna Defendants.

## CAUSES OF ACTION

### COUNT I: BREACH OF FIDUCIARY DUTY UNDER ERISA 404(a)(1)(B)
### (*Against Defendant Cigna TPA*)

37.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

38.     The Cigna TPA is the third-party claims administrator of the Cigna Health Plan; therefore, constitutes as a fiduciary to the Cigna Medical Plan and its members. Under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B), the Cigna TPA must discharge its duties solely in the interest of the Cigna Health Plan members.

39.     As a fiduciary, the Cigna TPA must act prudently with the care, skill and diligence that a prudent fiduciary would use, and must ensure that it is acting in accordance with the federal, state and local laws and mandates.

40.     The Cigna TPA, as the third-party claims administrator for the Cigna Health Plan, breached its fiduciary duties under ERISA by improperly adjudicating Patient CS' Covid Testing claim in violation of the FFCRA and the CARES Act and causing him to be financially responsible for a balance-bill that Congress and the Departments did not intend. Moreover, the Cigna TPA breached its fiduciary duty to provide requested materials to 24 Hour Covid on behalf of Patient CS so that 24 Hour Covid and Patient CS could have a full and fair review of its improperly adjudicated claims in accordance with 29 CFR § 2560.503-1. Lastly, the Cigna TPA is woefully misinformed of the applications of the FFCRA and CARES Act and its obligations thereunder. Ultimately, The Cigna TPA is <u>not</u> discharging its duties with respect to the Cigna Health Plan in

the interest of the Cigna Health Plan and for the exclusive purpose of providing benefits to members and defraying reasonable expenses of administering the Cigna Health Plan.

41.     These injuries are not remediable under 29 U.S.C. § 1132(a)(1)(B) due to the likelihood of this incident occurring again, especially while the Public Health Emergency, the FFCRA, and the CARES Act remain applicable and in effect. 24 Hour Covid seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). By engaging in the acts and omissions described above, the Cigna TPA breached its fiduciary duties to Patient CS and have violated ERISA, the FFCRA, and the CARES Act.

### COUNT II: BREACH OF FIDUCIARY DUTY UNDER ERISA 404(a)(1)(B)
#### (*Against Defendant Cigna Health Plan Committee*)

42.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

43.     The Cigna Health Plan Committee is the plan administrator of the Cigna Health Plan; therefore, constitutes as a fiduciary to the Cigna Medical Plan and its members. Under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B), the Cigna Health Plan Committee must discharge its duties solely in the interest of the Cigna Health Plan members.

44.     As a fiduciary, the Cigna Health Plan Committee must act prudently with the care, skill and diligence that a prudent fiduciary would use, and must ensure that it is acting in accordance with the federal, state and local laws and mandates.

45.     The Cigna Medical Plan Committee breached its fiduciary duties under ERISA by allowing the Cigna TPA to improperly adjudicate Patient CS' Covid Testing claim in violation of the FFCRA and the CARES Act and causing him to be financially responsible for a balance-bill that Congress and the Departments did not intend. Second, the Cigna Medical Plan Committee breached its fiduciary duty to provide requested materials to 24 Hour Covid on behalf of Patient

CS so that 24 Hour Covid and Patient CS could have a full and fair review of its improperly adjudicated claims 29 CFR § 2560.503-1. Moreover, the Cigna Medical Plan Committee is woefully misinformed of the applications of the FFCRA and CARES Act and its obligations thereunder. Lastly, pursuant to 29 U.S.C. § 1105(a), the Cigna Health Plan Committee failed to monitor and correct the Cigna TPA's misconduct in violating its fiduciary duty despite the Cigna Plan Committees continuing fiduciary duty to do so. Ultimately, The Cigna Medical Plan Committee is <u>not</u> discharging its duties with respect to the Cigna Health Plan in the interest of the Cigna Health Plan and for the exclusive purpose of providing benefits to members and defraying reasonable expenses of administering the Cigna Health Plan.

46.     These injuries are not remediable under 29 U.S.C. § 1132(a)(1(B) due to the likelihood of this incident occurring again, especially while the Public Health Emergency, the FFCRA, and the CARES Act remain applicable and in effect. 24 Hour Covid seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). By engaging in the acts and omissions described above, the Cigna Medical Plan Committee breached its fiduciary duties to Patient CS and have violated ERISA, the FFCRA, and the CARES Act.

## COUNT III: DECLARATORY JUDGMENT TO FORCE COMPLIANCE WITH FFCRA AND THE CARES ACT UNDER ERISA 502(a)(3)
### (*Against All Cigna Defendants* )

47.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

48.     ERISA § 404(a), 29 U.S.C. § 1004(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and fiduciaries and defraying reasonable expenses of

administering the plan, and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

49.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a beneficiary of a plan to file suit to "enjoin any act of practice" that violates Title I of ERISA or the terms of a plan, and/or obtain "other appropriate relief to redress such violations".

50.     The Court is requested to issue a declaratory judgment requiring the Cigna Defendants' compliance with FFCRA, the CARES Act, and ERISA in the adjudication of Covid Testing services.

## COUNT IV: FAILURE AND REFUSAL TO PROVIDE REQUESTED INFORMATION AND DOCUMENATION REQUIRED BY ERISA 502(C), 29 U.S.C. § 1132(c) (*Against All Cigna Defendants*)

51.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

52.     ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), provides that "any administrator" who "fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary" shall be, in the court's discretion, liable to the participant or beneficiary in the amount up to $110 a day from the date of such failure or refusal.[28] The information that a plan administrator must provide includes the controlling plan documents.

53.     ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) states: "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." ERISA

---

[28] *See* 29 CFR § 2575.502c-1 (adjusting penalty from $100 per day to $110 per day).

§ 109(c), 29 U.S.C. § 1029(c) provides that the Secretary of Labor may prescribe what further documents should be furnished. The Secretary of Labor's ERISA claim procedures regulations provide that, in order to provide a full and fair review, the Plan must:

> Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section.

29 C.F.R. § 2560.503-1(h)(2)(iii). The Secretary explains at Paragraph (m)(8) what documents are relevant to the claim, and thus are required to be produced under ERISA:

> A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
>
> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
>
> (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.[29]

54.     In this case, 24 Hour Covid as the designated authorized representative/attorney-in-fact made multiple requests for plan documents to the Cigna Defendants. The Cigna Defendants ignored 24 Hour Covid's requests for plan documents.

55.     Consequently, under ERISA, Plaintiff is entitled to recover a penalty in the amount of $110 per day for Cigna Defendants' failure and refusal to provide all required information upon request.

---

[29] 29 C.F.R. § 2560.503-1(m)(8).

## COUNT V: ATTORNEY'S FEES
### (*Against All Cigna Defendants*)

56.     Plaintiff is entitled to an award of attorneys' fees under ERISA, which allows a court to award "a reasonable attorney fee and costs of action to either party." 29 U.S.C. §1132(g)(1); *see Hardt v. Reliance Std. Life Insurance. Co.,* 130 S.Ct. 2149, 2152 (2010); *see also Baptist Mem. Hosp. - Desoto, Inc. v. Crain Auto., Inc.,* 392 Fed. Appx. 289, 299 (5th Cir. Miss. 2010).

## COUNT VI: VIOLATION OF THE FFCRA AND THE CARES ACT
### (*Against All Cigna Defendants*)

57.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

58.     The Covid Testing services that 24 Hour Covid provided to Patient CS constitutes as in vitro diagnostic products for the detection of COVID-19, as provided by Section 6001 of the FFCRA.

59.     24 Hour Covid is an OON laboratory and did not have a negotiated rate with the Cigna TPA or any affiliated entities or the Cigna Medical Plan for the provision of Covid Testing services despite 24 Hour Covid's multiple attempts to do so.

60.     In compliance with the CARES Act, 24 Hour Covid posted its cash prices for Covid Testing services on its public website.

61.     Under section 3202(a)(2) of the CARES Act, if a health plan does not have a negotiated rate with a provider, such as 24 Hour Covid, for providing Covid Testing services, the health plan is obligated to pay the provider its posted cash price for providing those services.

62.     By reason of the foregoing, 24 Hour Covid has been injured.

63.     Based on the above, 24 Hour Covid is entitled to judgment against the Cigna Defendants in an amount to be determined at the trial of this matter, plus interest thereon, together with the costs and disbursements of this action, including reasonable attorneys' fees.

## PRAYER

Plaintiff demands judgment in its favor against the Cigna Defendants as follows:

1. Declaring that the Cigna TPA breached the fiduciary duties it owes to Patient CS, as well as awarding injunctive and declaratory relief to prevent the Cigna TPA's continuous action detailed herein;

2. Declaring that the Cigna Health Plan Committee breached the fiduciary duties it owes to Patient CS, as well as awarding injunctive and declaratory relief to prevent the Cigna TPA's continuous action detailed herein;

3. Declaring that the Cigna Defendants violated their statutory obligations to adjudicate Covid Testing claims in accordance with Section 6001 of the FFCRA and Section 3202(a) of the CARES Act throughout the duration of the Public Health Emergency, as well as awarding injunctive and declaratory relief to prevent the Cigna TPA's continuous action detailed herein;

4. For statutory penalties for failure to provide plan documents upon request;

5. For reasonable and necessary attorney's fees;

6. Declaring that the Cigna Defendants have breached the FFCRA and the CARES Act regarding the coverage and reimbursement of the Covid Testing service claim submitted by Plaintiff on behalf of Patient CS, as well as awarding injunctive and declaratory relief to prevent the Cigna Defendants' continuous actions detailed herein; and

7.  For such other relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Ebad Khan
Ebadullah (Ebad) Khan
Federal Bar No. 2810999
State Bar No. 2409265
ekhan@24hourcovid.com
23330 US-59, Suite 300
Kingwood, Texas 77339
(281) 319.8306 Direct
(281) 605.6690 Facsimile

***Attorney for Plaintiff***